IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00294 SOM-2 |
| | ) | CIV. NO. 09-00559 SOM/KSC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING MOTION FOR |
| | ) | RECONSIDERATION; ORDER |
| ROMELIUS RAMIRO, | ) | DENYING REQUEST FOR |
| | ) | CERTIFICATE OF APPEALABILITY |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING MOTION FOR RECONSIDERATION;
ORDER DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY

I.      INTRODUCTION.

        Romelius Ramiro asks the court to revisit and
reconsider its previous order denying Ramiro's 28 U.S.C. § 2255
petition, and/or to issue a certificate of appealability.  Ramiro
posits that this court erred by summarily dismissing his argument
that his counsel was ineffective.  The court denies Ramiro's
reconsideration motion, as Ramiro fails to establish that this
court clearly erred or committed injustice in holding that Ramiro
had not met his burden of proving that his counsel was
ineffective.  Insofar as Ramiro seeks a certificate of
appealability, the motion is denied.  The court also denies
Ramiro's request for an evidentiary hearing.  When, as here, a
motion fails to raise a colorable argument when viewed against
the record, no evidentiary hearing is needed.

II.       STANDARD OF REVIEW.

        Motions for reconsideration after a final order are
available in § 2255 cases and may be brought under either Rule
59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.
United States v. Martin, 226 F.2d 1042, 1047 (9th Cir. 2000); Vo
v. United States, 2007 WL 2893654 at *1 (D. Haw. Sept. 27, 2007).
Reconsideration is appropriate if (1) the district court is
presented with newly discovered evidence, (2) the district court
committed clear error or the initial decision was manifestly
unjust, or (3) there is an intervening change in controlling law.
Sch. Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255,
1263 (9th Cir. 1993) (internal citations omitted).

        A judge must deny § 2255 relief if "it plainly appears
from the motion, any attached exhibits, and the record of prior
proceedings that the moving party is not entitled to relief."
Rule 4(b), Section 2255 Rules, see also United States v.
Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a
"district court has discretion to deny an evidentiary hearing on
a § 2255 claim where the files and records conclusively show that
the movant is not entitled to relief"). A "petitioner need not
detail his evidence, but must only make specific factual
allegations which, if true, would entitle him to relief."
Mejia-Mesa, 153 F.3d at 929 (internal citations omitted).
Although an evidentiary hearing is required if a petition states

2

a claim based on matters outside the record, the court can dismiss the petition without a hearing when a movant's allegations, viewed against the record, do not state a claim. Marrow v. United States, 772 F.2d 525, 526 (9th Cir. 1985).

III.     BACKGROUND.

On May 15, 2008, Ramiro was charged in an Indictment with two counts of knowingly and intentionally distributing methamphetamine in violation of 21 U.S.C. §§ 860(a), 841(a)(1), and 841(b)(1)(C), and 18 U.S.C. § 2.  On April 30, 2009, Ramiro pled guilty to Count 1, distributing methamphetamine on December 4, 2007, before Magistrate Judge Leslie Kobayashi.  The Government argued to dismiss the other count of the Indictment, distributing methamphetamine on January 31, 2008, after sentencing.  See Memorandum of Plea Agreement, Doc. No. 135 at 1 (May 1, 2009).

During the Rule 11 colloquy with Ramiro, the Magistrate Judge asked Ramiro whether he was a citizen of the United States. Upon being informed by Ramiro that he was not, the Magistrate Judge asked Ramiro whether he understood that "a conviction in this case may affect your right to remain in this country."  See Transcript of Withdrawal of Not Guilty Plea and to Plead Anew Before the Honorable Leslie E. Kobayashi, Doc. No. 168 at 12 (Apr. 30, 2009).  Ramiro's lawyer interjected that he had advised Ramiro that "he more than likely will be deported upon completion

3

of a sentence of incarceration." <u>Id.</u>

On May 20, 2009, this district judge accepted the guilty plea Ramiro had entered before the Magistrate Judge.  On August 17, 2009, the court sentenced Ramiro to a prison term of twelve months and one day, and six years of supervised release. During the sentencing hearing, the probation officer said that "if the offense of conviction specifically identifies methamphetamine, like in this case, then [Immigration and Customs Enforcement] dictates that, regardless of the nature or length of sentence imposed, deportation cannot be circumvented." <u>See</u> Transcript of Proceedings Before the Honorable Susan Oki Mollway, Doc. No. 164 at 11-12 (Aug. 17, 2009).  During that hearing, Ramiro's attorney consistently stated that the immigration judge would ultimately decide whether Ramiro would be deported.  <u>Id.</u> at 6-10.  Judgment was entered on August 24, 2009.

On November 24, 2009, Ramiro filed a § 2255 petition, arguing that his counsel had been ineffective in failing to tell him that a guilty plea would, rather than might, result in his deportation.  Ramiro also argued that his attorney had been ineffective in failing to tell him that he would not be released after serving his criminal sentence.  On November 27, 2009, the Department of Homeland Security took custody of Ramiro, as he was subject to removal based on his conviction of an aggravated felony.

4

On December 1, 2009, this court denied Ramiro's § 2255
petition, ruling that his counsel had not been ineffective,
because a defense counsel's failure to advise a defendant on
collateral matters such as removal proceedings cannot amount to
unreasonable performance under Ninth Circuit precedent.  See
United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003)
("counsel's failure to advise a defendant of collateral
immigration consequences of the criminal process does not violate
the Sixth Amendment right to effective assistance of counsel").
That same day, the court was notified that Sparlin & Tipon, LLLC,
had substituted as counsel for Ramiro.

On December 10, 2009, Ramiro filed a motion to revisit
and reconsider the court's order denying Ramiro's § 2255 motion.

IV.    ANALYSIS.

Ramiro claims that the court erred in denying his
§ 2255 petition and dismissing his ineffective assistance of
counsel claims.  In his § 2255 petition, Ramiro contended that
his counsel had been ineffective on two occasions.  First, Ramiro
complained that counsel had told him only that he might be
deported if he pled guilty, when, according to Ramiro, his
counsel should have told him that he would be deported if he pled
guilty.  Second, Ramiro complained that his attorney told him
that he would be released if he pled guilty and served his
sentence, but should have told him that he would be indefinitely

detained by Immigration and Customs Enforcement ("ICE").  Each argument is addressed in turn.

A.   Ramiro's Counsel Was Not Ineffective In Failing to Advise Ramiro That He Would be Deported.

Ramiro contends that the court erred in denying his § 2255 petition because Ramiro's counsel "effectively misled" him about the immigration consequences of his conviction by telling him that he might be deported.  Motion at 7.  Ramiro argues that a reasonably competent counsel would have advised Ramiro that he would be deported if convicted.  Id. at 8.  Ramiro's argument fails because Ramiro's counsel did not mislead him.  Ramiro fails to establish that counsel must advise a defendant that deportation is guaranteed.  In any event, Ramiro has not showed prejudice sufficient to establish ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, Ramiro must show both that his counsel's performance fell below an objective standard of reasonableness, and that the deficiency in his counsel's performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  When, as here, a defendant asserts that his or her counsel was deficient with respect to a guilty plea, the defendant satisfies the "prejudice" requirement when the defendant shows "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted

6

on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Ramiro relies on United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), and United States v. Cuoto, 311 F.3d 179, 187 (2d Cir. 2002), in arguing that counsel's "affirmative misrepresentation" as to the consequences of a conviction amounted to an unreasonable performance under the first prong of the Strickland analysis.  Those cases, which hold that counsel may perform unreasonably by effectively misleading the client about immigration consequences, do not apply here, as Ramiro's counsel did not mislead Ramiro.

In both Kwan and Cuoto, attorneys indicated to their clients that pleas of guilty to aggravated felonies would not necessarily result in deportation, even though deportation was a near certainty.  Kwan, 407 F.3d at 1008-09; Cuoto, 311 F.3d at 187.  Kwan, who was charged with bank fraud, asked his counsel whether pleading guilty would cause him to be deported.  Kwan's counsel assured him that, although deportation was possible, it was not a "serious possibility."  Kwan, 407 F.3d at 1008.  The Ninth Circuit found that the attorney, who responded erroneously to the defendant's specific questions concerning deportation, and who represented himself as having expertise in the immigration consequences of criminal convictions, grossly misled his client and performed unreasonably.  Id. at 1015-16, 1018.  Similarly, the attorney in Cuoto "assured [his client] that they could deal

7

with her immigration problem after the immigration plea" and that there were "things that could be done to avoid deportation." Cuoto, 311 F.3d at 183-84.  The Second Circuit held that these statements affirmatively misled the defendant into believing there deportation could be avoided, which was not the case.  Id. at 187.

In contrast, Ramiro's counsel made no affirmative misrepresentation regarding deportation.  During the plea colloquy, Ramiro's counsel said it was "more than likely" that Ramiro would be deported if he pled guilty.  Unlike the defendants in Kwan and Cuoto, Ramiro was aware of the serious likelihood of deportation.  Ramiro's counsel neither suggested that Ramiro could avoid deportation after pleading guilty, nor advised Ramiro that there was no "serious possibility" of deportation.  The court cannot conclude that Ramiro's counsel's statement was so inherently or grossly misleading as to the law that it was unreasonable.  See Santos-Sanchez v. United States, 548 F.3d 327, 334 (5th Cir. 2008) (attorneys' statements that deportation was "possible" was not so inherently misleading as to constitute an affirmative misrepresentation that the defendant could probably avoid deportation, especially as the defendant was given contact information for an immigration attorney and was on notice that there were potential immigration consequences of a guilty plea).

Ramiro is requiring an attorney to issue a guarantee.
But a guarantee of deportation could itself be unreasonable.
Whether an alien is deported is dependent "upon the order" of the
Attorney General.  See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien
. . in and admitted to the United States shall, upon the order of
the Attorney General, be removed if the alien is . . . convicted
of an aggravated felony at any time after admission.").  An
attorney must be wary in giving any guarantee or asserting
absolutely that something will occur in the future, especially
when the future action, such as deportation, depends on the
actions of another branch or another proceeding that the attorney
has little or no control over.  See United States v. Amador-Leal,
276 F.3d 511, 516 (9th Cir. 2002) (noting that although it is
virtually certain that a felon will be removed, that decision is
still up to another agency and there is still a deportation
process).

Ramiro cites no law holding that an attorney must
advise a client that he will certainly be deported.  Although the
Ninth Circuit has "not yet determined what 'more' would cause a
defense counsel's advice, or lack thereof, regarding the
immigration consequences of a conviction to fall below an
objective standard of reasonableness," this court has no reason
to expect the Ninth Circuit to classify as unreasonable an
attorney's decision not to describe deportation as an absolute

certainty.  Kwan, 407 F.3d at 1015.  An alien convicted of an aggravated felony may be almost certain to be deported, but it would be foolish for anyone to say that deportation is always unavoidable and will occur.  An attorney who makes such a statement is himself or herself probably being unreasonable.

Ramiro complains that the Magistrate Judge also informed him only that he might be deported, instead of telling him that he would definitely deported.  Ramiro appears to be saying that a judge must inform all defendants in similar circumstances that they will be deported.  Ninth Circuit law is to the contrary.  See Amador-Leal, 276 F.3d at 514 (court is not required to advise a defendant of the immigration consequences for a plea to be knowing and voluntary); cf. Haw. Rev. Stat. § 802E-2 (requiring a court, before accepting a guilty plea of a defendant convicted of a state law crime, to advise the defendant that a conviction "may have the consequences of deportation").  Indeed, the Supreme Court has noted, "There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."  INS v. St. Cyr, 533 U.S. 289, 322 (2001).

Because Ramiro's counsel was not unreasonable in telling Ramiro that he would likely be deported, this court need not reach the prejudice prong of an ineffective assistance of

10

counsel claim.  In any event, Ramiro makes no showing of prejudice.  Ramiro only asserts that he would have gone to trial, but he offers no evidence that the result at trial would have been better than the result he obtained through his guilty plea. In <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) the United States Supreme Court recognized that a defendant could show prejudice by establishing a reasonable probability that, but for counsel's unreasonable advice, the defendant would not have pleaded guilty and would have gone to trial.  <u>Accord</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 485 (2000).  But in discussing such prejudice, the Supreme Court looked to evidence that a trial would have had a more favorable result than the defendant actually obtained. Ramiro presents no evidence of a more favorable result, much less avoidance of deportation.  <u>Hill</u>, 474 U.S. at 59 (noting that the assessment of prejudice will depend "in large part on a prediction whether the evidence likely would have changed the outcome of trial").  In other words, the statement that one would have gone to trial must, to establish prejudice, be supplemented with evidence of how trial might have been a benefit.  Ramiro presents no evidence of a more favorable result, much less of avoidance of deportation.

Ramiro cites <u>Kwan</u> for the argument that "a defendant need not show that counsel's deficient performance more likely than not altered the outcome of the case," but only need show

that the result of the proceedings might have been different.
Kwan, 407 F.3d at 1015.  Even so, in Kwan, the outcome might have
differed based on evidence that Kwan would have moved for a
downward departure in sentencing, renegotiated his plea
agreement, or pled guilty to a lesser charge.  In other words, in
that case there was a likelihood that the result of the
proceedings would have been different and beneficial for Kwan.
Ramiro, by contrast, shows no likelihood that going to trial
would have resulted in a favorable outcome.

> B.  Ramiro's Counsel's Alleged Statement That Ramiro Would
>     Be Released After Serving His Sentence Does Not Amount
>     to Ineffective Assistance.

Ramiro argues that his counsel should have told him
that, if he pled guilty, he would not be released after serving
his sentence and instead would be held pending deportation
proceedings.  Motion at 14.  Ramiro contends that a "reasonably
competent attorney would have [advised Ramiro that he] would not
be released after serving his sentence but instead will be
subject to mandatory detention, for an indefinite duration, by
the Attorney General or the United States Immigration and Customs
enforcement, pending removal proceedings by virtue of his
conviction."  Id. at 13.  Ramiro contends that his counsel told
him he would be released after serving his criminal sentence.

If an individual commits an offense by violating the
Controlled Substances Act and is imprisoned, the Attorney General

12

has statutory authority to detain the individual upon release.
See 8 U.S.C. § 1226(c)(1)(B) ("The Attorney General shall take
into custody any alien who . . . is deportable by reason of
having committed any offense covered in section
1227(a)(2)(A)(iii) . . . when the alien is released.").
Mandatory detention under this statute is meant to be temporary
and relatively short, and is intended to "govern[] detention of
deportable criminal aliens pending their removal proceedings."
Denmore v. Kim, 538 U.S. 510, 527-28 (2003).  The detention
typically lasts a month and a half, or about five months in the
minority of cases in which a defendant chooses to appeal.  Id.
at 530.

        Even assuming Ramiro's attorney told him he would be
released while his deportation proceeding was pending, Ramiro
does not establish ineffective assistance of counsel.  An
attorney's failure to make it clear that a defendant will not be
released pending deportation proceedings is not automatically
prejudicial.  Interestingly, even if Ramiro thought at the time
of his guilty plea that he would be released during deportation,
he heard without protest at the time of sentencing that such was
not the case.  During sentencing, this judge told Ramiro that
"when you finish your  12-month sentence, you have to face
immigration.  Somebody else, not me, will decide what happens."
Transcript of Proceedings Before the Honorable Susan Oki Mollway,

13

Doc. No. 164 at 6-7 (Aug. 17, 2009).  This judge further said
that "you wouldn't actually be out [of prison] because once you
finish your prison term, again immigration would step in and an
immigration decision would be made."  <u>Id.</u>  The probation officer
also said that "Ice has a zero tolerance policy on drug
distribution offenses.  If the offense of conviction specifically
identifies methamphetamine, like in this case, than their zero
tolerance policy dictates that, regardless of the nature or
length of sentence imposed, deportation cannot be circumvented."
<u>Id.</u> at 11.  "The defendant has the opportunity to appeal or to
waive, but that does not prevent ICE from pursuing deportation."
<u>Id.</u> at 12.

        As this court noted in its earlier order denying
Ramiro's § 2255 petition, an attorney's failure to advise a
defendant of collateral consequences is not ineffective
assistance.  Moreover, even if Ramiro would have gone to trial,
he does not show that he would likely have been acquitted and
thereby have avoided detention by immigration authorities.

        C.   This Court Denies the Request for a Certificate of
             Appealability.

        A petitioner must obtain a certificate of appealability
before pursuing any appeal from a final order in a § 2255
proceeding.  <u>See</u> 28 U.S.C. § 2253(c)(1)(B).  When the denial of a
habeas corpus petition is based on the merits of the claims in
the petition, a district court should issue a certificate of

                                14

appealability only when the appeal presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petition is denied on the merits of the claim, the petitioner is required to show that reasonable jurists could debate whether the issues should have been resolved differently or are "adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v. Knowles, 556 F.3d 757, 771 (9th Cir. 2009). The district court must indicate which specific issue or issues satisfy the standard for issuing a certificate, or state its reasons for denying a certificate. United States v. Asrar, 116 F.3d 1268, 1269 (9th Cir. 1997).

The court denies Ramiro's request for a certificate of appealability. Ramiro's counsel did not perform unreasonably, and Ramiro has not, in any event, shown prejudice. Given Ninth Circuit law on collateral consequences of a conviction, reasonable jurists would not find this court's assessment of the ineffective assistance of counsel claim debatable or wrong. Accordingly, the request for a certificate of appealability is denied.

V.          CONCLUSION.

        For the foregoing reasons, the court denies the motion

for reconsideration and denies the request for a certificate of

appealability.


                        IT IS SO ORDERED.

                        DATED: Honolulu, Hawaii December 22, 2009




                        /s/ Susan Oki Mollway

                        Susan Oki Mollway
                        Chief United States District Judge


United States v. Ramiro, 08CR294 SOM-02; 09cv559 SOM/KSC; ORDER DENYING MOTION
FOR RECONSIDERATION; ORDER DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY.